ROBERT H. McCARTER, attorney-general,

*v.*

VINELAND LIGHT AND POWER COMPANY.

[Submitted February 8th, 1907.    Decided February 11th, 1907.]

1. The legislature has the power to bestow upon an individual the right to exercise those public franchises which can only be exercised through legislative sanction to the same extent that such powers can be bestowed by legislative enactment upon private corporations.

2. The act of March 11th, 1842 (*P. L. 1842 p. 164* which has been preserved by *Rev. Stat. 1846 p. 136 tit. 5 ch. 3 § 20; Rev. p. 192 § 85; P. L. 1896 p. 303 § 82*), authorizing the franchises of public utility corporations to be sold through the medium of receiverships, sanctioned the use of such franchises by an individual purchaser.

3. The act of March 11th, 1842, and the subsequent acts extending its operation, will not receive that strict construction which is applied to legislative grants, because the act grants no new rights, but simply makes provision for the transmission of title, by sale or lease, of rights already granted.

4. The act of February 17th, 1881 (*Gen. Stat. p. 3694 §§ 34, 35*), operates to withdraw legislative sanction for the use, by an individual, of the sovereign prerogatives purchased under decrees of courts, and requires their use by corporations created by the act *ex proprio vigore.*

5. On information, filed by the attorney-general, this court may restrain the unwarranted use of sovereign prerogatives.

On information by the attorney-general for injunction.

The information seeks to restrain defendant corporation from extending its gas mains through the highways of the borough of Vineland and township of Landis. Defendant was incorporated in the year 1900 under the General Corporation act. *P. L. 1896 p. 277.* Among the objects named in its certificate of incorporation is the power to perform the acts which are now sought to be restrained. No permission has been given to defendant, by either of the municipalities named, to open or occupy the highways. Defendant claims the right to do so as lessee of the franchises

granted by the legislature to the Vineland Gas Light Company, by act approved March 15th, 1870. *P. L. 1870 p. 577.* That act granted to the company last named the right to lay gas pipes in the highways now in dispute. Defendant company claims title to the franchises of the earlier company in the following manner: In the year 1884 the Vineland Gas Light Company became insolvent and passed into the hands of a receiver appointed by this court. Pursuant to an order of court the receiver made public sale of all the property and franchises of the insolvent company and John R. Farnum became the purchaser at that sale. The sale was thereafter duly confirmed by the court. Farnum operated the works until the year 1900, when, on March 27th, he conveyed the same to Arthur A. Halbrook. The conveyance included all the real and personal property purchased by Farnum at the receiver's sale and some additional property and extensions of the works, and specifically included the franchises sold by the receiver. At the same time, though under date of March 31st, 1900, Halbrook and wife conveyed the same property, except the franchises, to defendant company, and, by a separate instrument, leased the franchises to defendant company for the term of ninety-nine years. Since that date defendant company has operated the works and made such improvements and extensions as the growth of the community has seemed to warrant. At the time the information was filed defendant was engaged in making further extensions, and the present information is filed to enjoin this proposed new work. The present application is for a preliminary injunction and has been heard on the information, answer and accompanying affidavits.

*Mr. Edwin F. Miller* and *Messrs. Gaskill & Gaskill,* for the informant.

*Messrs. French & Richards* and *Mr. Leverett Newcomb,* for the defendant.

LEAMING, V. C.

By act of March 11th, 1842, the legislature authorized the sale, through the medium of receiverships, of the franchises of public

utility corporations. *P. L. 1842 p. 164.* This legislation, with but minor changes, has been preserved since that date. *Rev. Stat. 1846 p. 136 tit. 5 ch. 3 § 20; Rev. p. 192 § 85; P. L. 1896 p. 303 § 82.* This statute authorized the sale of the franchises of insolvent public service corporations to any person or persons for the unexpired term of the franchises, and bestowed upon the purchaser the use and enjoyment of the franchises so sold to the same extent that the stockholders of the corporation to which the franchises had been theretofore granted could have used and enjoyed the same. The corporations referred to by the act are only insolvent corporations engaged in work of a public nature, and the franchises referred to are manifestly such parts of the sovereign power as had been granted to the corporation—rights and privileges which can only be enjoyed through legislative grant. In the case of the gas corporation in question this would include the right to lay and maintain gas pipes in the public highways now in dispute for the purpose of supplying the public with gas. Unless some limitation can be found upon the legislative power to grant such franchises to an individual, the act must be regarded as vesting in an individual purchaser at the receiver's sale an absolute title to the franchises sold, including the power to operate under the franchises so conveyed to the same extent that the insolvent corporation could have operated; this necessarily includes the right to make extensions within the territory defined in the charter act of the insolvent corporation. I am not aware of any limitation upon the legislative power of the nature suggested. I apprehend that it is, at this time, within the legislative power to authorize gas works to be constructed and operated by an individual in substantially the same manner that such privileges are now conferred upon gas corporations. It is urged that a strict construction of the act authorizing sales of franchises must be adopted, and that such a construction will discover limitations upon the rights passing to the purchaser under the sale. I cannot regard the statute as one requiring that strict construction which is applied to legislative grants. The statute grants no new rights, but simply makes provision for the transmission of title, by sale or lease, of the rights already granted. *Black* v. *Delaware and Raritan Canal Co., 22 N. J.*

*Eq.* (7 *C. E. Gr.*) *130, 402.* The title transmitted at the sale is to the highest bidder and cannot be regarded as a right bestowed in personal confidence and incapable of future transmission, or one that will terminate at the decease of the purchaser. The duration of the term for the enjoyment of the franchise is specifically defined by the act as the remaining portion of the term of the franchise as originally granted.

Our law appears to have contained no provision contemplating other than that a purchaser at such sale should be privileged to operate, as an individual, under the franchises so acquired by the purchaser or to transmit the title to the rights so acquired in the same manner that the title to other property rights could by law be transmitted, until the year 1875, the year that the constitutional amendments took effect. March 25th, 1875, an act was approved (*P. L. 1875 p. 41*) which provided that whenever any railroad, canal, turnpike, bridge (or) plank road, of any corporation of this state, should be sold under the decree of court or under power of sale in a mortgage deed, the person or persons for or on whose account the purchase should be made were, by the act, constituted a body politic and corporate and vested with

"all the right, title, interest, property, possession, claim and demand, in law and equity, of, in and to such railroad, canal, turnpike, bridge or plank road, with the appurtenances, with all the rights, powers, immunities, privileges and franchises of the said corporation, which may have been granted to or conferred thereon by statute or statutes, in force at the time of such sale and conveyance, and subject to all the restrictions imposed upon such corporation by any such act or acts, except so far as the same are modified hereby."

The act then required the persons for or on whose account the purchase was made to meet, within thirty days after·the conveyance, at the county town of one of the counties in which the works were located, two weeks' notice of such meeting first being given by newspaper notice, and organize "said new corporation" by ·electing a president and six directors. At that meeting a corporate name and seal were required to be adopted, and the amount of the capital stock determined. Preferred stock is also authorized, as well as bonds not exceeding in amount the aggregate amount of stock. The new corporation was also required to

file in the office of the secretary of state, within one month after organization, a certificate of the date of organization, the name adopted, the amount of stock and the name of the officers selected.

This statute of 1875 does not authorize the persons, in whose interest the purchase is made, to form themselves into a corporation. The act *ex proprio vigore* makes them a corporation, and requires them to effect an organization in the manner and within the time specified. Whatever legal title may pass by the conveyance, in form made to an individual purchaser or to individual purchasers, is clearly intended by the statute to be held by him or them, not for his or their individual use, but for the use of and to be used by the statutory creation. It seems entirely manifest that this act denies legislative sanction to the exercise of the franchises by an individual or individuals as such, and in effect forbids such use, and requires that any use of the franchises shall be exercised through the medium of the corporation created by the act and organized pursuant to the directions of the act.

It will be observed that the act last referred to does not include gas corporations. No legislation of this nature appears to have been adopted touching gas corporations until the act of February 17th, 1881. *P. L. 1881 p. 33; Gen. Stat. p. 3694 §§ 34, 35.* This act relates to sales made pursuant to a decree of court which include the "property, rights, powers, immunities, privileges and franchises of any turnpike, plank road, gas, water, or gas and water corporation." By language almost identical with the former act, it provides that

"the person or persons for or on whose account such property, rights, powers, immunities, privileges and franchises may be purchased shall be and they are hereby constituted a body politic and corporate, and shall be and they are vested with all the right, title, interest, property, possession, claim and demand, in law and equity, of, in and to such turnpike, bridge, plank road, gas, water, or gas and water company, with the appurtenances, and with the rights, powers, immunities, privileges and franchises of the corporation as whose the same may have been sold, and which may have been granted to or conferred thereupon by any law of this state in force at the time of such sale or conveyance."

The act then provides that the persons in whose interest the purchase was made,

"may organize said new corporation by the election of such officers and directors, issue such certificates of stock, create and issue such preferred stock, and from time to time issue such bonds and secure the same as was authorized by the act or acts under and by which said former corporation was created."

The act then makes it the duty of the new corporation to file a certificate of the organization with the secretary of state within one month after the date of the organization. This provision touching the certificate is in almost the exact language of the similar provision of the act of 1875. It will be observed that the later act differs from the earlier in the matter of the organization of the new company in that the later act introduces the organization provision with the word "may" whereas "shall" is used in the earlier act. In the later act no time is named for the organization and no place for meeting is named and no notice to the meeting is required. The later act fixes the amount of the stock and bonds authorized as that authorized by the predecessor corporation, whereas in the former act these matters were to be determined by action of the organization meeting.

It is entirely clear that the general scope and purpose of the act of 1881 is the same as that of the act of 1875. It clearly withdraws whatever legislative sanction might have theretofore existed for the use, by an individual, of the sovereign prerogatives purchased under decrees of courts, and requires their use by a corporation which is created by the act and which it is intended that the purchasers of the franchises shall organize as an operative concern by the election of its officers pursuant to the act. It is possible that, in the absence of an adjudication of forfeiture, through *quo warranto,* long delay, upon the part of the person or persons holding the legal title to the franchises, in organizing the corporation pursuant to the act of 1881, will not operate to destroy the right to do so; but I am entirely clear that until this shall have been done any exercise of these franchises by an individual, or by a corporation not created by the act and organized in substantial compliance with the act, is without legislative sanction and is an unwarranted usurpation of power. If this be true, there can be no doubt of the power of this court to restrain such acts at the instance of the attorney-general. *Stockton* v. *Central Railway Co., 50 N. J. Eq. (5 Dick.) 52, 78.*

Farnum, who purchased at the receiver's sale in 1884, instead of associating with himself the requisite persons and organizing the corporation created by the act, conveyed the works and franchises to Halbrook, and Halbrook conveyed the works and leased the franchises to defendant corporation. Defendant is a corporation created by and organized under the General Corporation act, and can in no sense be considered or treated as the corporation created by the act of 1881 and organized pursuant to the requirements of that act. The construction which I have given to the act of 1881 as denying to the individual purchaser the right to operate under the franchises purchased operates in like manner to deny the right to defendant.

Acquiescence upon the part of the state in the operation of defendant's works is urged as a bar to the relief sought by the present information. If it should be assumed to be possible for the sovereign, by acquiescence in encroachments upon sovereign prerogatives, to be barred from the assertion of sovereign rights, such view could not properly be extended to the new or additional encroachments here sought to be restrained.

I am not unmindful of the duty of this court to withhold its extraordinary writ when rights are not clear, and especially when it is sought to restrain the progress of a public work upon a preliminary injunction. But the present record appears to disclose all the facts useful to the determination of the questions involved, and I consider it clear that informant is entitled to the relief sought.

A preliminary injunction will be advised.